Case Number 23-CV-565-LJV

exhi exbits to ~~case~~ Amendment Complent

Carl ~~signature~~

7-11-2024



CH,MEDIATION,ProSe

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Buffalo)
### CIVIL DOCKET FOR CASE #: 1:23-cv-00565-LJV

Jamieson v. City of Buffalo INC, et al  
Assigned to: Hon. Lawrence J. Vilardo  
Demand: $91,000,000  
Cause: 42:2000e Job Discrimination (Employment)

Date Filed: 06/20/2023  
Jury Demand: None  
Nature of Suit: 440 Civil Rights: Other  
Jurisdiction: Federal Question

**Plaintiff**

Carl Jamieson          represented by  Carl Jamieson
164 Indian Chruch Rd
Buffalo Creek Subo, NY 14210
PRO SE

V.

**Defendant**
City of Buffalo INC.

**Defendant**



CLERK
UNITED
BUFFALO, NY 14202-3350

OFFICIAL BUSINESS

UUNder ADA Act

23-CV-565 LJV

The State of Disability Act Taking away My Native Status has Diminised My Life The State Erie County & City & Now The ADEA Amendment

Judge
Lawrence J. Vilardo

Have Taken Acts That have Caused Life time ptsd  Just iN This Letter & Doc. ALONE

Refused to give access to Computer file programs

42 USC 12202  Judge has

Carl Jamieson
164 Indian Chruch Rd
Buffalo Creek Subo, NY 14210

1:23-CV-005565-LJV

impairs policy or provisions of a treaty. Oregon-Pacific Forest Products Corp. v. Welsh Panel Co. D.C.Or.1965, 248 F.Supp. 903

State Laws must yield to valid treaties where there is a conflict between them, and even laws governing essentially local matters must bow when treaty provisions override them. Wyers v. Arnold, 1941, 147 S.W.2d. 644, 347 Mo. 413, certiorari denied 61 S.Ct. 1112, 313 U.S. 589, 85 L.Ed. 1544

When once made, a treaty is the supreme law of land, which every court must effectuate and in respect of which no authority for variation or modification exists by any judicial tribunal. In re Blasi's estate, 1939, 15 N.Y.S.2d. 682, 172 Misc. 587.
In 1871 the United States eliminated making treaties with Indian Nations as described in USC 25 Sec. 71:
"No Indian Nation or tribe within the territory of the United States shall be acknowledged or recognized as an independent nation, tribe or power with whom the United States may contract by treaty; but no obligation of any treaty lawfully made and ratified with any such Indian Nation or tribe prior to March 3, 1871 shall be hereby invalidated or impaired. Such treaties, and any Executive orders and Acts of Congress under which the rights of any Indian tribe to fish are secured, shall be construed to prohibit (in addition to any other prohibition) the imposition under any law of a State or political subdivision thereof of any tax on any income derived from the exercise of rights to fish secured by such treaty, Executive order, or Act of Congress if section 7873 of Title 26 does not permit a like Federal tax to be imposed on such income.

On November 11, 1794, a Treaty of Peace and Friendship between the United States of America, Party A, and the Haudenosaunee (Tribes of Indians called the Six Nations), Party B, was concluded and signed at Canandaigua, New York. The United States ratified this Treaty by Proclamation of January 21, 1795, published it in U.S. Statutes at Large as 7 Stat. 44, and an original is held on file in the National Archives Records Administration as Ratified Indian Treaty #21. The Haudenosaunee Grand Council gave agreement by consensus as evidenced by a Wampum Belt known by Haudenosaunee as the George Washington Belt. Said Treaty is in force from that date in perpetuity.

Party A to these treaties consists of the United States Et al., as specified in the Constitution of the United States. The Federal officials that are authorized to make treaties are the President, Commissioners appointed by the President, as he shall have power, by and with the Advice and consent of the Senate to make treaties, provided two thirds of the Senators present concur. Each and every state that enters the Union agrees to uphold this constitution. Therefore, by ratifying

Amendment
1:23-CV-00565-LJV

the US Constitution, Ratifies all lawful treaties made under the Constitution.

Party B, Haudenosaunee Federal Government, consists of fifty condoled Sachems of the fifty tribes and the Western Door, Hotiske'ae gehdoh Wa ha ya dinyo da, acting in consensus as the Grand Council as specified in The Great Law of Peace and distributed as follows:

- Seneca Nation: eight Sachems representing nine tribes
- Cayuga Nation: ten Sachems representing ten tribes
- Onondaga Nation: fourteen Sachems representing thirteen tribes
- Oneida Nation: nine Sachems representing nine tribes
- Mohawk Nation: nine Sachems representing nine tribes

The Haudenosaunee are referred to in history by several names: Iroquois Confederacy, The Five Nations, The Six Nations, and The League of the Iroquois. Sub-parties to the treaties referenced herein are Member Nations that are under the auspices of the Western Door. They consist of those 179 nations that have an alliance with the Haudenosaunee and that do or shall reside within the boundaries of the United States: "For the United States do not interfere with nations, tribes or families of Indians elsewhere resident." 1794 Treaty with the Six Nations, Note.

The Canandaigua Treaty of 1794 has been recognized by the U.S. District Court for the Western District of New York as a valid treaty. Bowen v. Doyle, 880 F, supp 99, page 114-115, (W.D.N.Y. 1995). The Courts have held that "In interpreting Indian treaties, doubtful expressions are to be resolved in the favor of the Indians", Settler v. Lameer, 507.F2d, 231 (C.A.W.A.S.H. 1974).

Further, the U.S. Supreme Court held "Wording of treaties and statues ratifying agreements with the Indians is not to be construed to their prejudice", Antone v. Washington, 95 S.Ct. 944, 420, U.S. 194, 43 L.ED 2d.129, (1975).

Additionally, the U.S. Supreme Court stated that the "United States Supreme Court will construe the treaty of the United States with Indians as the unlettered Indians understood it and as justice and reason demand", Menominee Tribe of Indians v. United States, 88S, ct. 1705, 391 U.S. 304, 202 L.Ed 2d.697, (1968)

AMENDMENT
1:23-CV-00565-LJV

This is confirmed by the Treaty of 1794 and the fact that the Six Nations were never conquered. They are not subject to the laws and regulations that have been prescribed under Bureau of Indian Affairs (BIA) regulations as they deal with conquered nations and Indians who are citizens of the United States. They are a sovereign nation and they are an ally. Therefore these treaties shall be considered supreme law of the land. The Treaty of 1775 and 1794 with the Six Nations shows that the roads were to be opened for the use and free travel by members of the Six Nations, by the United States or the colonies.

These Treaties provided the right to the Six Nations and the United States to freely travel and cross the road in the United States. The Supreme Court in Dickerson vs. the U.S., 120 S.Ct. 2326 (2000), upheld that a constitutional decision of this Court may not be in effect overruled by an act of Congress.

Therefore, having the treaty rights which include the Path Belt, it is the right of the Indians to be able to pass freely and the United States promised this according to the Treaty of the Six Nations of 1794.

Therefore, what we are looking at is Constitutional treaty issues. Treaty rights are supreme law of the laxi which all judges of any state are bound thereby.

Furthermore, Fourteenth Amendment of the Constitution of the United States, Section 2 clause 3 specifically excludes Indian from citizenship by the word "excluding Indian not taxed".

Therefore, they were not citizens of the United States, but of a separate sovereign nation with specific treaty rights. They have not been able to be conscripted into the military but they have voluntarily fought along side of the United States as a friend and ally per the Treaty of 1794.

*Amendment*
*1:23-cv-00565-LJV*

citizens of Canada or the U.S., but are citizens of their own nations of the League [Six Nations Confederacy].

### United States Code:

The Six Nations, its comprising Nations, Tribes, Bands, Communities, Families and individual Indians have not outlived the protection afforded by the Constitution, Treaties, and Laws of Congress. This protection is included and insured by 25 USCS 1321 (b):

> *"Nothing....shall authorize the alienation, encumbrance, or taxation of any real or personal property...belonging to any Indian or Indian Tribe, Band or Community that is held in trust by the United States..."*

### Attorney General's Opinion

And with regard to these Indians:

> *"As long as the United States recognizes their national character, they are under the protection of Treaties and the Laws of Congress, and their property is withdrawn from the operation of State Law."*

### Worcester v. Georgia: Supreme Court Decision:

An opinion rendered in 1832 is still precedent:

> *"The United States must construe treaties the way Indians perceived them if there are conflicting interpretations presented by the US and the Indian Nation involved."*

## Present Position

Today the Traditional Governments of the Haudenosaunee continue to reaffirm our common principles of land and treaty rights. The following points are just a few of the essential principles on which the Traditional Haudenosaunee Governments that still operate under the Great Law of Peace stand firmly united.

  1) We still hold the Aboriginal and Treaty Title to our lands.

  2) Our Treaties with the United States are the Supreme Law of the Land. The United States ... [is] obligated by those Treaties. (Constitutionally supported)

  3) Treaties are also recognized as International binding instruments.

The Haudenosaunee also reaffirm the following principles of trade and commerce, as established by the Trade and Commerce Committee of the Grand Council of Chiefs many years ago:

Amendment
1:23 CV-00565-LJV

perpetual Alliance, offensive and defensive, is to be enter'd into as soon as may be with the Six Nations; their limits to be ascertain'd and secur'd to them; their Land not to be encroach'd on, nor any private or Colony Purchases made of them hereafter to be held good; not any Contract for Lands to be made but~between the Great Council of the Indians at Onondaga and the General Congress. The Boundaries and Lands of all the other Indians shall also be ascertain'd and secur'd to them in the same manner; and Persons appointed to reside among them in proper Districts, who shall take care to prevent Injustice in the Trade with them, and be enabled at our general Expense by occasional small Supplies, to relieve their personal Wants and Distresses. And all Purchases from them shall be by the Congress for the General Advantage and Benefit of the United Colonies."

Article XIV of the Articles of Confederation and Perpetual Union, July 12, 1776: "A perpetual Alliance, offensive and defensive, is to be entered into by the United States assembled as soon as may be, with the Six Nations, and all other neighboring Nations of Indians; their Limits to be ascertained, their Lands to be secured to them, and not encroached on; no Purchases of Lands, hereafter to be made of the Indians by Colonies or private Persons before the Limits of the Colonies are ascertained, to be valid: All Purchases of Lands not included within those Limits, where ascertained, to be made by Contracts between the United States assembled, or by Persons for that Purpose authorized by them, and the great Councils of the Indians, for the general benefit of all the United Colonies."

The Treaty of 1775 with the Six Nations is evidence in precept, Stare decisis et non quieta movere, through the Articles of Confederation and Perpetual Union by The United States Constitution, Article VI, Paragraph 2: "...and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be supreme Law of the land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the contrary notwithstanding."

Under this clause a 'treaty' is to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates without the aid of any legislative provision, but when the terms of the treaty import a contract whereby either of the parties engages to perform a particular act, the treaty addresses the political, not the judicial, department for enforcement. Z. & F. Assets Realization Corporation v. Hull, 1940

The appropriate application of that part of this clause which confers the same supremacy on laws and treaties is to such acts of the state legislature as do not transcend their powers, but, though enacted in the execution of acknowledged state powers, interfere with or are contrary to the laws of congress, made in pursuance of the Constitution or some treaty made under the authority of the United States; in every case, the Act of Congress, or the treaty, is supreme; and the law of the state, though enacted in the exercise of powers not controverted, must yield to it. Gibbons V. Ogden, N.Y. 1824, 22 U.S. 1, 9 Wheat. 1, 6 L.Ed. 23.

AMENDMENT

1:23-CV-00565-LJV

It is the declared will of the people of the United States that every treaty made by the authority of the United States shall be superior to the constitution and laws of any individual state. Ware v. Hylton, Va.1796, 3 U.S. 199, 3 Dall. 199, 1 L.Ed. 568

A treaty is generally self-operating in that it requires no legislation by either congress or the state. Amaya v. Stanolind Oil & Gas Co. C.C.A. Tex 1947, 158 F.2d 554 Certiorari denied

The Constitution and laws of the United States are as much a part of the law of every state as its own local laws and constitution, and their obligation is imperative upon state judges, in their official, and not merely in their private capacities. State ex. Rd. Handley v. Superior Court of Marion County, 1958, 151 N.E.2d 508, 238 Ind. 421.

The canons of construction applicable in Indian law are rooted in the unique trust relationship that existed between the United States and the Indian Nations. It is well established that treaties must be construed liberally in favor of the Indians with ambiguous provisions interpreted to their benefit: Choctaw Nation v. United States, 318 US 423, 431432 (1943); Chaote V. Trapp 224 US 665.675 (1912), McClanahan v. Arizona State Tax Commission, 411 US 164. 174 (1973); Carpenter v. Shaw, 280 US 363, 367 (1930); Winters V. Washington State Commercial Passenger Fishing Vessel Association, 443 US 658. 690 (1979) (this court has nonetheless refused to find that Congress has abrogated Indian Treaty rights); and Menominee Tribe v. United States, 391 US 404 (1968).

The Treaty of 1775 with the Six Nations: "The Path Belt governs and ascertains the right to travel so that in order for the preservation of Friendship between the United States and our Brethren of the Six Nations and their Allies that a free and mutual Intercourse be kept up between us; there, we the twelve united Colonies, by this Belt, remove every Difficulty that may lay in the Great Road that runs through the middle of our Country, and we will also clear up and open all the small Roads that lead into the Great one. We will take out every Thorn, Briar and Stone, so that when any of our Brothers of the Six Nations or their Allies have an Inclination to see and talk with any of their Brethren of the twelve united Colonies, they may pass safely without being scratched or bruised. The Road is now open for our Brethren of the Six Nations and their Allies and they *may* now pass and repass as safely and freely as the people of the twelve united Colonies themselves. And we are further determined by the assistance of God to keep our Roads open and free for the Six Nations ~md their Allies as long as this Earth remains.

Treaties made during the Confedral period between the United States and Indian Nations are entitled to the same respect as treaties made with foreign nations and both equally became the supreme law of the land under the Constitution. Oneida Indian Nation of New York v. State of New York., C.A.2 ~.Y.) 1988, 960 F.2d 1145, certiori denied 110 S.Ct. 200, 493 U.S. 871, 107 L.Ed.2d *154*

Article XI of the Articles of Confederation and Perpetual Union July 21 1775: "A

AMENdMENT 23-CV-565 LJV

Title

NOTE: UNAUTHORIZED ALTERATION OR ADDITION TO THIS DOCUMENT IS A VIOLATION OF SECTION 7209 PROVISION 2 OF THE NEW YORK STATE EDUCATION LAW.

NOTE: THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF AN ABSTRACT OF TITLE.

● SET OR EX. 5/8" REBAR

Erie County
& Buffalo New York
Sale under false or
fraudulent Title

Land sold
as Erie County
Taxed as Buffalo

The

EX. REBAR 0.38'W. 1.77'S.

GAR. 0.22'W. 1.84'S.

FENCE 1.5'S.

PARALLEL WITH INDIAN CHURCH RD

63.20'

FENCE 0.4'W.

FENCE 0.3'S. 0.1'W.

PARCEL "B"

FRAME GARAGE

CONCRETE GAR. 0.06'W.

FENCE 5.8'E.

PARALLEL WITH INDIAN CHURCH RD.

63.20'

FRAME TREE HOUSE ON LINE

24' DIA. POOL

FRAME DECK

FENCE 6.1'E.

180.75'

FIELDS AVENUE (50' WIDE)

CONCRETE

OHW

2½ STORY BRICK & FRAME HOUSE NO.164

ENCLOSED PORCH

PARCEL "A"

PARALLEL WITH FIELDS AVE.

180.75'
160.75'

FENCE 0.1'W.
FENCE 0.3'E.

ANGLE IRON 1.8'N. ON-LINE

EX. IP

63.20'

INDIAN CHURCH ROAD (66' WIDE)

| DATE | REVISION/TYPE |
|------|---------------|
|      |               |
|      |               |
|      |               |
|      |               |
|      |               |

SURVEY OF
PART OF LOT 18, TOWNSHIP 10, RANGE 7
BUFFALO CREEK RESERVATION
CITY OF BUFFALO, ERIE COUNTY, NEW YORK

**GPI** GPI ENGINEERING, LANDSCAPE ARCHITECTURE & SURVEYING, LLP
ENGINEERING • SURVEYING • LANDSCAPE ARCHITECTURE
4950 GENESEE STREET, SUITE 100
BUFFALO, NEW YORK 14225
(716) 633-4844    FAX 633-4940

Job No. 6921              Date: APRIL 23, 2018
Scale: 1" = 30'          TAX No. 123.83-3-9.1

